CASE No. 1093.

## WALKER & TRENHOLM v. KEE.

1. A promissory note payable to a partnership firm, A. & B., was endorsed by A. before maturity in the name of A. & B. to another firm, A., B. & C., and at the same time it was endorsed by A. in the firm name of A., B. & C. to D. D. knew to whom the note originally belonged, and saw the endorsements made. At the time, A. & B. were indebted to A., B. & C., and B. afterwards said to D. that the note was a good collateral. *Held*, that there was no fraud in the transfers, and that D. was entitled to the note.

2. Where a vendee of land receives only a bond for titles, and, at the same time, executes his promissory notes for the purchase-money, the transaction constitutes an executory contract for the sale of land, which, in favor of endorsees of the notes for value before due, who had knowledge of the contract, may be specifically enforced in equity, by directing payment of the notes, or, on failure, a sale of the land, and an application of the proceeds to such indebtedness.

3. The vendee having failed to comply with his contract, executed an obligation to pay rent to the vendors' assignees, who claimed under an assignment made by the vendors subsequent to the transfers of the notes, and this obligation was deposited by such assignees with the clerk to await the judgment of the court. *Held*, that the endorsees were entitled to this rent obligation.

Before HUDSON, J., Lancaster, October, 1880.

These were actions by Walker & Trenholm against A. M. Kee and R. M. Miller and T. G. Cureton, assignees of Stevens & Cureton, and of Cureton, Ardrey & Co.; and by The Merchants' and Farmers' National Bank, of Charlotte, N. C., against the same defendants. The two actions were commenced in 1879, and were afterwards consolidated and heard together.

The object of the action, the contract of Kee, and other matters are stated in the opinion. From the testimony it appears that Walker & Trenholm received the notes assigned to them in consideration of moneys advanced by them to Cureton, Ardrey & Co., and in ignorance of the consideration on which the endorsement of Stevens & Cureton was based. This endorsement was made by Cureton. They had knowledge of the contract with Kee which secured these notes, and relied upon it as security for the repayment of their advances.

The Charlotte Bank took the Kee note as collateral for notes then due them, and retained it by agreement to secure the payment of renewals of the bank notes. It was represented to them by Cureton at the time of its deposit that this Kee note was secured by the land for which it was, in part, given. The cashier of the bank saw Cureton endorse this note with the firm name of Stevens & Cureton, and at the same time with the firm name of Cureton, Ardrey & Co. The business of the two firms with the bank was done almost entirely by Cureton. The Massey note was as follows:

" $1,200.00.            FORT MILLS, S. C., Jan'y 4th, 1878.

" Sixty days after date we promise to pay to the order of B. H. Massey, twelve hundred dollars, negotiable and payable at Merchants' and Farmers' National Bank, Charlotte, N. C., with interest after maturity at eight per cent. per annum, value received.

(Signed)            " CURETON, ARDREY & Co.
(Endorsed)   " B. H. MASSEY."

This note was discounted by the Charlotte bank, having never before been in circulation. In North Carolina, interest at eight

per cent. by contract is not usurious. The president of the bank testified that the bank would not have received the notes but for the collaterals, and only valued the collaterals on Kee because of the supposed lien on the land; that "Stevens afterwards also explained the matters to us. * * * I am not sure that Stevens specially referred to the bond for titles, but certainly spoke to us of the Kee notes as good collaterals. Don't remember that he ever until lately told me that he was not aware that we had the Kee note."

J. H. W. Stevens testified—

The notes of Mr. Kee belonged to Stevens & Cureton. Mr. Cureton endorsed them over to Cureton, Ardrey & Co.; but they were never the property of that firm. I was the managing partner of Stevens & Cureton. Cureton did much of the bank business, as he lived near the bank in Charlotte. After Cureton went to Fort Mills, I drew all the checks. Just before our firm made an assignment, I was, for the first time, made aware that the bank had the collaterals. I complained of Cureton for making the transfer. I turned the papers over to Cureton to allow him to raise money of Walker & Trenholm for Stevens & Cureton—T. J. Cureton was my partner, and often raised money for the firm. The note of A. M. Kee was never before pledged to raise money. Cureton had no instruction at all from me. I was dissatisfied as soon as I found out that he had transferred the notes to the bank of Charlotte for Cureton, Ardrey & Co.

T. J. Cureton testified—

I am a member of Stevens & Cureton and of Cureton, Ardrey & Co. The latter firm is largely indebted to the bank in Charlotte by the two notes in question. I pledged the note of A. M. Kee and the land contract upon which the note is based as collateral for the two $1,200. Stevens knew of the pledge only a short time before the assignment. At the time of the pledge the books of Stevens & Cureton show that Stevens & Cureton were largely indebted to Cureton, Ardrey & Co. I owned half interest in Stevens & Cureton, and one-third interest in Cureton, Ardrey & Co. I generally had to raise money from the bank. I did all the bank business, and would at no time have hesitated

to use collaterals of either firm. I never tried to conceal this transaction with the bank. Stevens often visited me.

Cross-examined—

I had many book-keepers. Sometimes kept books myself. Stevens had full opportunity to examine our books. He managed at Lancaster, and I at Fort Mills. The land sold to Kee was a good part of the assets of Stevens & Cureton, as it turned out. The bank of course knew when I endorsed and turned over the Kee note, that it was the property of Stevens & Cureton.

Re-direct examination—

The Kee notes belonged to Stevens & Cureton, and were by me transferred by endorsement to Walker & Trenholm and the bank, and before maturity.

The Circuit decree, after a statement of facts, was as follows:

In January, 1879, Walker & Trenholm brought suit against A. M. Kee, on the notes transferred to them, and recovered judgment. To this action the aforesaid assignees were co-defendants with Kee, and vigorously assailed the validity of the transfer of the notes upon the ground that T. J. Cureton negotiated the notes without authority from J. H. W. Stevens, and in fraud of the rights and interest of the firm of Stevens & Cureton, The defense failed, and upon appeal to the Supreme Court the judgment below was affirmed.

To the present suit, so far as the transfer to the bank is concerned, the same defense is interposed, and upon a similar state of facts.

It is scarcely necessary to say that the judgment of the Supreme Court so recently rendered as above stated, is decisive of this issue as to the title of the bank to the note aforesaid. We are thus brought to the consideration of the present case.

A. M. Kee, it is said, is insolvent, and neither Walker & Trenholm have been able to collect of him their judgment on the notes aforesaid, nor can the aforesaid bank collect the notes owned by it. Of Kee's insolvency, there is no question. Hence both parties have united in this action, the object of which is to subject the land purchased of Stevens & Cureton, by Kee, to

the payment of the notes given for the purchase-money. The title to this land never passed from Stevens & Cureton until the assignment to Miller and Cureton, February 18th, 1878, and then the transfer was made *subject to the contract of A. M. Kee*, who makes no defense to this action, but who, if able to pay, only desires to know to whom he can rightfully make payment. The assignees claim said land, and deny plaintiff's right in any manner to subject it to the payment of the judgments and notes which they hold against Kee; and it is here that the real issue of the cause arises. I am clearly of opinion that the plaintiffs are entitled to the relief demanded. Neither Stevens & Cureton, nor their assignees, have any interest in this land sold to Kee, except that the fee is in the assignees, subject to the contract with Kee. By the sale of the notes, every dollar of the money due for the land has been realized by the vendors. To the holders of the notes, Kee is alone responsible, and upon payment to them of these notes, could sue out titles from Stevens & Cureton (or rather their assignees), and no resistance could be raised to his demand for titles upon paying the notes. When the notes were traded, they were accompanied by copies of the contract with Kee, which was represented as a security strengthening the notes; and, although there was no written assignment of this contract to Walker & Trenholm, nor to the bank, yet the notes were represented as resting upon it as security, and were bought on the faith of this supposed security. The purchasers are accordingly, as against Kee, entitled to all the remedies for enforcing payment of the notes which Stevens & Cureton possessed. They had a right, on Kee's default, to have the land sold and proceeds applied to the payment of their notes, and to this remedy these vendees, the plaintiffs, are equally entitled, just as clearly as would be the purchaser of a note secured by a mortgage entitled to the foreclosure of the mortgage. The sale of a note carries with it all the liens, legal or equitable, given to secure it.

We deem it unnecessary to cite many of the numerous authorities bearing on this issue in support of the view. In 1 *Jones on Mortgages*, § 235 *et sequentia*, is to be found a full and clear exposition of this doctrine. The author says: "An

assignee of a note or bond, given for purchase-money by one who has taken a contract of sale, or who has taken a conveyance in which a lien on the land is expressly reserved, like the assignee of a note secured by mortgage, is entitled to the benefit of the security, and may enforce specific performance of the contract of sale, or may enforce the lien reserved." The lien is regarded as incident to the debt. The discussion is full and very forcible, and further extracts are unnecessary. I refer to this book for further information. The plaintiffs are entitled to demand of Kee a specific performance of his contract by a given day, and on his failure to comply, they are entitled to have the land sold by order of this court, and titles made to the purchaser so as to bar and foreclose the said Kee, Stevens & Cureton, and all persons claiming under them, of all right to redemption. In the application of proceeds of sale, Walker & Trenholm, being the oldest assignees, are entitled to be first paid, and then the Merchants' and Farmers' Bank, and it is so adjudged. Let the plaintiffs prepare the necessary order to carry this decree into effect—an order in the nature of a judgment of foreclosure and sale.

It was brought to the attention of the Circuit judge, that the clerk held an obligation of Kee for rent, described in the following receipt:

Received of R. M. Miller and T. G. Cureton, a lien in their favor as assignees, signed by A. M. Kee, and two hundred dollars in cash; said lien being for $650, which lien and money is in controversy in the above action, and to be by me turned over to the parties who may be entitled by the judgment of the court. The depositing of said money is in no way to prejudice the rights of any of the parties, but is made only to prevent litigation, trouble and expense, in an effort now being made to bind said Miller and Cureton to security for rent of the place on which A. M. Kee now resides, and is one of the objects of said suit.                               D. A. WILLIAMS,

July 16th, 1880.                               *Clerk C. C. P.*

Thereupon the following order was passed:

It is further ordered, that D. A. Williams, as clerk of this court, do proceed to enforce the collection of the rent due on the rental obligation or lien represented to have been placed in his hands by the said assignees of Stevens & Cureton, to secure rent for the same lands for the present year, the same having been deposited with said clerk as security—a security to said plaintiffs in case they finally succeed. in this action, and that said clerk do hold the proceeds of rent until the further order of this court.

There was still another order directing details of sale, execution of papers, application of proceeds and that all the parties to this action be barred of any further right, title, &c., to the Kee land.

The exceptions are copied in the opinion.

*Messrs. Wylie & Hough*, for appellants.

The question of title to the notes held by Walker & Trenholm has been settled by the case in 14 *S. C.* 142. But the bank had knowledge of the misappropriation of the assets of Stevens & Cureton for the purposes of Cureton, Ardrey & Co.; the bank is therefore guilty of collusion, and has no title to the note. 3 *Kent* 41; 4 *Johns.* 251; 8 *Ves.* 542; *Story Part.* § 133.

The only evidence of indebtedness by Stevens & Cureton to Cureton, Ardrey & Co. is the testimony of Cureton in reply. It is not alleged in the pleadings, the notes were included in the general assignment, the assignees say nothing of any such indebtedness, and Stevens had no knowledge of the endorsement of the notes for such purpose.

The title to the notes gives no lien on the land. There was no deposit of the contract—only an exhibit of a copy. *Story Eq. Jur.* § 1020. Stevens & Cureton had no lien; they had title, and this they never transferred. There is no vendor's lien in this State. 2 *Des.* 509. The delivery of the notes would not pass the legal title, and the equitable title was in Kee. A partner has no right to assign real estate or a mortgage to

pay a creditor of the partnership. *Story Part.* §§ 92, 94, 101. Walker & Trenholm have paid less than the amount of the Kee notes; how then can they enforce a conveyance? The question of usury will not be discussed. The assignees are certainly entitled to the rents until sale of the land. This whole doctrine of equitable mortgages has been regarded by some English judges as in violation of the statute of frauds.

*Messrs. Allison & Connors,* contra.

October 1st, 1881. ⸗ The opinion of the court was delivered by

McGOWAN, A. J. The firm of "Stevens & Cureton," consisting of J. H. W. Stevens and Thomas J. Cureton, were in business at Lancaster Court House, and that of "Cureton, Ardrey & Co.," consisting of the same partners and one J. W. Ardrey, at Fort Mills, York county.

On December 18th, 1876, Stevens & Cureton, being the owners of several tracts of land, contracted to sell the same to A. M. Kee for the sum of $9,025. The contract was in writing, signed by all the parties, and, among other things, contained this provision: "For the payment of the purchase-money the party of the second part is to execute to the parties of the first part, at this signing, a warranted right and title to the house and lot in Fort Mills, S. C., known as the 'Kee house,' upon which the said Kee now resides, valued at fifteen hundred dollars in this trade, and *four promissory notes* of this date [describing them in amounts, and payable in 1877–78 and '79]. Now, should the party of the second part pay, or cause to be paid, all the said notes, &c., at maturity, then, when the last note is paid, the parties of the first part bind themselves to make to the party of the second part a warranted deed of right and title to the lands above described; but, should the party of the second part fail to pay, or cause to be paid, either or any of the above described notes, as they shall mature, then this contract becomes null and void and of none effect, and the parties of the first part shall have the right to peaceable possession to said above described lands, with a forfeiture on the part of the party of the

second part of all payments, &c., which may have been made previously, &c." Four notes were executed in accordance with the agreement. The "Kee house" was conveyed and Kee went into possession of the lands sold.

During the year 1877, T. J. Cureton endorsed the *second* and *third* of the notes to Cureton, Ardrey & Co., and they transferred them for value to Walker & Trenholm, of Charleston. Prior to February 18th, 1878, the said T. J. Cureton also endorsed the fourth and last note to the firm of Cureton, Ardrey & Co., and they, being indebted to the Merchants' and Farmers' National Bank of Charlotte, N. C., to an amount exceeding $2,400, transferred and delivered to said bank the aforesaid last note for $2,325, collateral security for their debt. These transfers respectively were made before the notes fell due. T. J. Cureton was the actor in both transactions, and made the transfers first by Stevens & Cureton to Cureton, Ardrey & Co., and then by Cureton, Ardrey & Co. to the parties.

On February 18th, 1878, each firm made an assignment for the benefit of creditors to the same assignees—R. M. Miller and T. G. Cureton. In the assignment of Stevens & Cureton was included the lands which had been sold as aforesaid, " subject to a contract of sale to A. M. Kee."

In January, 1879, Walker & Trenholm sued A. M. Kee on the note transferred to them and recovered judgment. To that action the aforesaid assignees were parties, and denied the title of plaintiffs to the notes on the ground that T. J. Cureton negotiated the notes without authority from Stevens, and in fraud of the rights of Stevens & Cureton. The defense failed, and, upon appeal to the Supreme Court, the judgment below was affirmed.

A. M. Kee being insolvent, Walker & Trenholm holding their note with judgment on it, and the bank holding the note transferred to them, have united and instituted this action to compel specific performance of the land agreement, and, as incidental thereto, to sell the land in payment of their debts. Judge Hudson heard the case and decreed for the plaintiffs, and ordered the land sold.

It seems that Kee, the purchaser, upon failure to comply with

the terms of sale, acknowledged his liability to pay rent, and gave an obligation to pay it, which, under some agreement, had been deposited with the clerk of the court, "to be turned over to the parties who may be entitled by the judgment of the court." In a supplemental order Judge Hudson directed the clerk to collect this obligation and hold the proceeds subject to the future order of the court. From these orders the defendants appeal to this court on the following exceptions:

1. "Because his Honor erred in finding as fact that T. J. Cureton endorsed the fourth and last note to Cureton, Ardrey & Co., being a note made by A. M. Kee to Stevens & Cureton for $2,325, when the evidence established the fact that it never was endorsed to them and never belonged to them.

2. "Because the evidence established the fact, and his Honor should have so found, that the said note was in the hands of T. J. Cureton for the purpose of raising money for Stevens & Cureton, and that T. J. Cureton, without the knowledge and consent of J. H. W. Stevens, transferred the said note to Merchants' and Farmers' National Bank, one of the plaintiffs, for the debt of Cureton, Ardrey & Co., and that said bank knew the note belonged to Stevens & Cureton, and, at the time of said transfer, the said T. J. Cureton, in presence of J. R. Holland, cashier of the bank, endorsed the firm name of Stevens & Cureton thereon.

3. "Because the transfer and endorsement of the said note of $2,325 by T. J. Cureton, under the facts and circumstances, was a fraud on J. H. W. Stevens, and Stevens & Cureton, and their creditors, and said bank, having knowledge of said facts and circumstances, had no right to receive the same, and was guilty of fraud in so doing, and his Honor should have so held, or, at least, that the bank acquired no title to the note, but that it belonged to defendants as assignees of Stevens & Cureton.

4. "Because his Honor erred in finding, as fact, that copies of the contract for purchase of the land by Kee accompanied the delivery of the notes to plaintiffs, when, from the evidence, such copy accompanied only the notes delivered to Walker & Trenholm, and none accompanied the one delivered to the bank, and because his Honor failed to find, when plaintiffs' evidence

established the fact, that the copy so furnished to Walker & Trenholm by Cureton, Ardrey & Co., or T. J. Cureton, was by them returned.

5. "Because neither the plaintiffs, Walker & Trenholm, nor the Merchants' and Farmers' Bank, have any lien, equitable or otherwise, on the said Kee lands, and his Honor should have so held.

6. "Because there was no assignment of said land, equitable or otherwise, by Stevens & Cureton to plaintiffs, or either of them, or to Cureton, Ardrey & Co., or by them to plaintiffs, or any right or interest in said land, or charge created on the same to pay plaintiffs' claims, and his Honor should have so held.

7. "Because Kee, under the terms of the contract for purchase, having forfeited all right to the land before this action, and having surrendered the same to the assignees, his Honor erred in holding 'that no resistance could be raised to his demand for titles upon payment of the notes, and that plaintiffs are entitled to demand of him specific performance, and upon his failure so to do, to have the land sold and titles made to purchasers so as to bar and foreclose said assignees, and Stevens & Cureton, and those claiming under them.'

8. "Because, if plaintiffs stand in the place of Kee, they are not entitled to the land, or to have it sold for their claims, unless they pay to these defendants the balance of notes in their hands over and above their claims respectively against Cureton, Ardrey & Co., and his Honor should have so held.

9. "Because the note of $1,200, by Cureton, Ardrey & Co., to B. H. Massey, and by him endorsed to said bank, partly to secure which the Kee note of $2,325 was deposited, as it is alleged, as collateral, bears on its face interest at eight per cent., and is, therefore, usurious, and his Honor should have so found, and allowed no interest or costs to said bank.

10. "Because his Honor, by an order after the decree, to wit, on October 8th, 1880, erred in directing D. A. Williams, clerk, to take possession of and hold the rents of the said land, which plaintiffs are not entitled to, but which belong to these defendants.

11. "Because the decrees and orders thereon are contrary to the law and evidence."

*The first four exceptions* relate to a question of fact, viz., whether Stevens & Cureton endorsed *bona fide* the fourth note to Cureton, Ardrey & Co., and they transferred the same for valuable consideration to the bank. It is insisted by the assignees that the bank has no title to the note they hold, for the reason that it was given to Stevens & Cureton, and could not be assigned by one of the firm to secure a debt due by himself or another person or firm; that T. J. Cureton could not assign a note of Stevens & Cureton to secure a debt due by Cureton, Ardrey & Co. It has been already decided that the plaintiffs, Walker & Trenholm, have title to the notes assigned to them, and judgment has been rendered upon them in their favor against Kee. See opinion in former case of *Walker & Trenholm* v. *Kee*, 14 *S. C.* 142. The same question substantially, which was then decided, is now renewed as to the note transferred to the bank. The steps taken in the assignment to the bank were identical with those which were taken in the assignment to Walker & Trenholm. We do not see any particular in which the testimony in one case differs essentially from that in the other. In both, T. J. Cureton, for the firm of Stevens & Cureton, first assigned to Cureton, Ardrey & Co., and then in their name assigned as collateral security for debts of Cureton, Ardrey & Co. T. J. Cureton was a partner of both firms, and, as such, was the agent of each as to all transactions within the scope of its business. Stevens & Cureton were indebted to Cureton, Ardrey & Co., and it was within the authority of either of the partners of the firm of Stevens & Cureton to assign a note belonging to them to secure that debt. So Cureton, Ardrey & Co. were indebted to the bank, and it was within the scope of T. J. Cureton's agency, as partner of that firm, to transfer a note belonging to it as collateral security for that debt, whether such note was originally given to them, or they had acquired it by assignment. Cureton cannot, and does not, object to the transfer, and it seems, from the testimony, that Stevens, the other partner, some time after the transfer, confirmed it, or at least informed the president of the bank that

"the Kee note was a good collateral." The bank certainly has possession of the note, and we concur with the Circuit judge that there was no proof of fraud in the tranfers by which it reached the plaintiffs, and that they have title to the same.

*The other exceptions make a question of law.* It is insisted that even if the transfer of the notes to the plaintiffs respectively were valid, and gave them the legal title thereto, that the transfer alone did not operate as an assignment of the land or any charge upon it, the legal title to which is still in the defendants as assignees of Stevens & Cureton, and, consequently, the plaintiffs are not entitled to have it sold towards payment of the notes.

It is true that Kee executed no mortgage to secure the purchase-money of the land. It is also true that, according to our decided cases, we have not, in this State, what is known technically as "the vendor's lien," as declared and enforced in the English Chancery—that is, *a lien upon land sold to secure the purchase-money, whether the vendor has, or has not, executed titles to the vendee.* But as to all *executory* contracts for the sale of land in which the title-deed is not executed, but the vendor gives a bond for titles, we have what is equivalent to the vendor's lien in the well-recognized equity doctrine of specific performance of contracts for the sale of land. In reference to the doctrine of specific performance, equity makes a difference in contracts concerning *land* and those about *personalty.* As to the latter, specific performance will not generally be decreed, for the reason that no particular or peculiar value is attached to any one thing over another of the same kind, and compensation in damages given by a law court will meet the full merits as well as the full object of the complaint. "But in contracts respecting a specific messuage or parcel of land, the same considerations do not ordinarily apply. The locality, character, vicinage, soil, easements or accommodations of the land generally, may give it a peculiar and special value in the eyes of a purchaser, * * and, therefore, compensation in damages would not be adequate relief," &c. *Story Eq.* § 146.

After some controversy upon the subject, this principle is well established in this State as applying both to *the vendor* and

vendee of lands.  The leading case upon the subject is that of *Gregorie* v. *Bulow,* reported in *Richardson's Equity Cases,* 235, which, overruling the case of *Bacon* v. *Roche,* previously decided, held that " a vendor máy sustain a bill against a vendee for the specific performance of a contract for the sale of the land."  In that case Judge O'Neall laid down the principle which has ever since been followed.  He said : " It is conceded that the vendee may come into equity to compel the vendor to perform by executing titles, and that upon this bill the court will decree him to pay or secure the money, according to his contract, before they decree the execution of titles.  If the court has the power to relieve one of the parties in the same contract, must it not, of necessity, possess the same power as to the other ? Contracts for the sale of land in equity are regarded as dependent ; the vendor cannot be compelled to part with his land until the vendee pays or secures to be paid the purchase-money, and the vendee cannot be compelled to pay until he receives a good and sufficient title in law," &c.

Although we do not recognize what is known as " the vendor's lien," we regard the doctrine of specific performance as *to executory contracts* for land as settled beyond controversy in this State.  The contract in this case was *executory,* and the vendors, Stevens & Cureton, had the right to require specific performance, and the only question is whether the assignees of the notes have the same right.

Some confusion seems to have arisen from regarding the notes as nothing more than promissory notes, pure and simple.  The fact is, they sprung out of the agreement for the sale of the land and are only a part of it.  They were executed at the same time with the agreement, and have on their face the statement that they were given " in part payment for a tract of land," &c. They must be considered in connection with the agreement, and, thus considered, the papers constitute, both in form and substance, *an executory contract for the sale of land.*  The transfer of these notes, accompanied with the agreement or with knowledge of its existence and contents, carried to those who acquired title to them all the rights which attached to them in the hands of Stevens & Cureton.  The transfer was in fact, as it was

intended to be, not merely an endorsement of the paper as promissory notes, but a sale and transfer of the land trade and all rights incident thereto. The plaintiffs, before they accepted the notes, were informed of the nature of the land trade and the connection of the notes therewith; indeed, the notes, upon their face, gave such information, and the plaintiffs have now the same rights which Stevens & Cureton had originally to ask specific performance. 1 *Jones Mort.* § 235; *Muller* v. *Wadlington,* 5 *S. C.* 346.

Judge Story says: "It may also be stated that, in general, where the specific execution of a contract respecting lands will be decreed between the parties, it will be decreed between all persons claiming under them in privity of estate, or of representation, or of title, unless other controlling equities are interposed. If a person purchases lands *with knowledge of a prior contract to convey them,* he is, as we have seen, affected by all the equities which affected the lands in the hands of the vendor. *The lien of the vendor for the purchase-money attaches to them,* and such purchaser may be compelled either to pay the purchase-money, or to surrender up the land, or to have it sold for the benefit of the vendor. * * * On the other hand, if the vendee, under such a contract, conveys the same to a third person, the latter, upon paying the purchase-money, may compel the vendor, and any person claiming under him in privity, or as a purchaser with notice, to complete the contract and convey the title to him. The general principle upon which this doctrine proceeds is, that from the time of the contract for the sale of the land, the vendor as to the land becomes a trustee for the vendee, and the vendee as to the purchase-money a trustee for the vendor, who has a lien upon the land therefor. And every subsequent purchaser from either, with notice, becomes subject to the same equities as the party would from whom he purchased." *Story Eq.* §§ 788, 789.

We are not called upon to decide whether A. M. Kee, who entered upon the land under a contract to purchase, and paid part of the purchase-money, would be liable, in an action for specific performance, to account for rents and profits of the lands before judgment. It seems that under the provision in

the agreement as to forfeiture, or for some other reason, the pur-
chaser admitted his liability to pay rent after a certain time, and
gave a rent obligation, which is now in the hands of the clerk,
"to be turned over to the parties who may be entitled by the
judgment of the court." Having determined that all the rights
of Stevens & Cureton, *quoad the notes,* were transferred to the
respondents and that they have the right to ask specific perform-
ance of the agreement as to the land for their payment, it would
seem to follow that the rents, an incident of the land, should
go with it. In the view we take, Stevens & Cureton have been
paid in full for the land, and they have no further interest in it
or its products. In the beginning they got the "Kee lot," and,
as we suppose, the first note when it fell due, and then they
transferred, in payment of their debts, the remaining notes.
True, their assignees have still the legal title to the land, but
they hold it as trustees for the payment of the notes still due,
and, surely, they cannot claim the rents by any higher right.
The notes having been transferred only as collateral to secure
debts to the plaintiffs, respectively, the rights of plaintiffs, as
herein determined, must, of course, cease as soon as their debts
are paid.

The question of usury was properly abandoned.

The judgment of this court is that the judgment of the Cir-
cuit Court be affirmed and the appeal dismissed.

SIMPSON, C. J., and McIVER, A. J., concurred.